## Roberts' Executor *vs* Dale *et al.*

ERROR TO THE ALLEN CIRCUIT.

*Distribution. Refunding bonds. Auditors. Decree.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

CHANCERY.

Case 51.

*October* 23.

THIS is a proceeding against an executor, instituted by an assignee of the interest of one of the legatees.

There is error in the decree rendered, in this: 1st. That refunding bonds have not been required, before ordering execution against the executor. The time that has run since probate, is not so long as to justify the presumption, that there were no subsisting outstanding debts or demands against the estate.

2d. In leaving it to the Clerk to ascertain and deduct the amount of the costs, from the aggregate found against the executor, and then to divide the residue; and after ascertaining the amount of the two replevin bonds against Dale and Harlan, and the interest thereon, to deduct the same from the one third decreed to Dale, and ordering executions for the amount so ascertained by the Clerk, without the supervision of the Court. And the more especially is there error in this respect, as the replevin

The Chancellor before permitting executors to issue on decrees for distribution of estates, sho'ld require refunding bonds to be given by the distributees, where the lapse of time is not such as to raise the presumption that the debts are all paid.

A decree for distribution should ascertain the amount of each share in the estate, and not leave lengthy calculations and set-offs to be

ROBERTS' EX'R.
vs
DALE et al.

made by the Cl'k
to ascertain each
one's share, es-
pecially where
the Clerk is re-
quired to travel
out the record to
examine papers
not on file, to
make such esti-
mates. An audi-
tor should be
appointed to
make and report
such estimates
for the adoption
or revision of the
Court.

bonds, or copies thereof, are not in the record, and the amounts or date of the bonds, are not shown, nor the time from whence interest has run. The Clerk is of course required to travel out of the record to ascertain these facts, and upon ascertaining them, to make the estimates, ascertain the result, and issue executions thereon. These are matters which should have been submitted to, and ascertained by the master, subject to the supervision of the Chancellor before rendering the final decree.

And as the case must be reversed for the errors indicated, we would remark that we are not satisfied that injustice has not been done to Roberts, the executor, in fixing the amount of cash for which he is made responsible. There seems to be a discrepancy between his answer as well as the answer of Mrs. Roberts, and the amount of cash reported in the inventory. Both answers alledge that there was only thirty dollars on hand at the death of the decedent, one third of which was paid to Mrs. Roberts, yet two hundred and forty three dollars, ($243,) is reported in the inventory as on hand. May not the sum so reported be the same $242 which the executor admits he received from Virginia, after the death of his testator, with one dollar which he admits he received from another source? And may he not, through mistake and oversight, have supposed that the amounts so received had not been reported in the inventory, when, as the inventory was not made till September, they were in fact received and embraced in the same? If this be so, the executor has been charged twice with the same amount. A further enquiry should be directed through the master upon this subject.

The practice of
the Courts in
finally hearing
causes involving
the settlement of
accounts with-
out the interven-
tion of the mas-
ter, and the aid
of his report, is
not only trouble-
some to the Cir-
cuit Courts, but
to this Court,
and is unsafe to

And here we would remark, as we have often remarked, that the practice of finally hearing causes involving the settlement of accounts, without the intervention of the master and the aid of his report, is not only burthensome to the lower Court, and also to this Court, but is unsafe to litigants. The master may take additional proof as to doubtful items, and call upon the parties upon oath, to explain, and reporting the settlement and proof by which each item is sustained, with the result, to the Court, not only facilitate the labors of the Court and relieves

him from the mere clerical drudgery of making out the account, but time being allowed to the parties to except to any erroneous item, and show cause against it, adds greatly to the safety of litigants, and their security against inadvertance or mistake, and enables this Court to see the basis upon which the decree was made to rest, without traveling through a tedious calculation to ascertain whether the decree is right or wrong. It is questionable whether this Court ought not to reverse a decree for this single omission, in a case involving the settlement of conflicting accounts, on account of the superior safety of the practice indicated. In a doubtful case we should feel it our duty to do so.

The decree is reversed and cause remanded, for the errors suggested, and upon the return of the cause it is directed that it may be submitted to the master, with instructions to take proof and make inquiry, by calling upon the parties on oath, if the opposite party desire it, or the master deem it proper for his own information, in relation only to the doubtful matter suggested, this Court being satisfied with the estimates made and amounts of debits and credits allowed in all other respects, as well as with the decree upon the merits, except as before indicated, and that the master ascertain the amount of costs, also the amount of the replevin bonds and interest, and adjust the same as directed by the decree, making such change only as his inquiries may authorize, in relation to the debit for cash, made against the executor, and that a decree may be rendered as intimated in this opinion, and the costs of this Court are divided.

*B. & A. Monroe* for plaintiff; *Letcher & Tilford and Underwood* for defendants.

ROBERTS' EX'R.
*vs*
DALE *et al.*

litigants. "Might this Court reverse for an omission alone in cases involving the settlement of complicated accounts? In a doubtful case we should feel it our duty to do so."