**WILLCUTS, Collector of Internal Revenue, v. ORDWAY et al.**

Circuit Court of Appeals, Eighth Circuit.
April 18, 1927.

No. 7581.

Internal revenue �köm8(5)—Beneficiaries' shares in trust fund held not taxable as "income" of trust estate, but as separate units to several distributees; "distribution" (Revenue Act 1916, § 2; Revenue Act 1918, § 219; Revenue Act 1921, § 219 [Comp. St. §§ 6336b, 6336⅛ii]).

A will bequeathed to each of the children of testator an equal share in the income of a trust fund. Pursuant to its terms the shares of the adult children were paid to them each year, while the shares of the minor children, after payment of certain expenses for maintenance, etc., were invested, to accumulate until they severally reached the age of 21 years. The trustees each year purchased securities with the share of each minor, in his or her name, which they kept in a special safety deposit box, apart from any papers of the trust, and they were not carried on the books, nor treated as any part of the trust estate. *Held*, that such segregation of the shares of the minors was a "distribution," and neither they nor their accumulations were subject to tax as "income" of the trust, but as separate units to the several beneficiaries under Revenue Act 1916, § 2, Revenue Act 1918, § 219, and Revenue Act 1921, § 219 (Comp. St. §§ 6336b, 6336⅛ii).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Distribution; Income.]

In Error to the District Court of the United States for the District of Minnesota; Joseph W. Molyneaux, Judge.

Action at law by John G. Ordway, and others, trustees, against L. M. Willcuts, Collector of Internal Revenue. Judgment for plaintiffs, and defendant brings error. Affirmed.

For opinion below, see 12 F.(2d) 105.

Frederick W. Dewart, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Lafayette French, Jr., U. S. Atty., of St. Paul, Minn., A. W. Gregg, Gen. Counsel, Bureau of Internal Revenue, and T. H. Lewis, Jr., Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for plaintiff in error.

William G. Graves, of St. Paul, Minn. (Sanborn, Graves & Ordway, of St. Paul, Minn., on the brief), for defendants in error.

James J. Forstall, Herbert Pope, and E. Barrett Prettyman, all of Chicago, Ill., as amici curiæ.

Before STONE and KENYON, Circuit Judges, and POLLOCK, District Judge.

STONE, Circuit Judge. This is a writ of error by the collector of internal revenue from a judgment entered, after overruling a general demurrer to the petition, for the refund of certain income taxes.

In 1917, Lucius P. Ordway created a trust providing, *inter alia*, as follows:

"The balance of the income of said trust shall be divided into five equal parts, it being my intention that each of my children shall be entitled to an equal proportion of the income of said trust fund. The shares of each of my adult children * * * shall be distributed to them at such times in the course of each year as shall be deemed by said trustees convenient and expedient; from the shares of my minor children, Katherine Ordway and Richard Ordway, there shall be paid them, or expended for their account, until they reach the age of twenty-six years such a sum as in the discretion of said trustees shall be deemed by them necessary and desirable for their proper maintenance, education and support. * * * The balance of the shares of said minor children, after payment of said expenses, shall be invested by said trustees for their benefit, and allowed to accumulate, the income from said accumulated amount to be paid them on reaching the age of twenty-one and the principal at such time as said trustees shall in their discretion deem advisable.

"Said trustees shall keep proper books of

account covering said trust fund property, and shall keep separate books covering the cumulative profit of the minor beneficiaries hereinbefore described."

Katherine Ordway became 21 years old in April, 1920, and Richard, in March, 1924. For each of the years 1918 to 1923, inclusive, the trustees made certain expenditures for the maintenance of Katherine from the one-fifth annual income allotted to her and earned under the trust. The balance of such annual income was promptly invested by the trustees in particular securities purchased in her name and for her benefit. The same procedure was followed in dealing with the one-fifth annual income under the trust coming to Richard. These securities were placed in a special safety deposit box separate from other papers of the trust. The trustees had exclusive control over this box. Such securities have been carried on the books of the beneficiaries as their property and have never been listed on the books of the trust or in any way treated by the trustees as part of the corpus of the trust. The petition then alleges:

"That until the calendar year 1922 said beneficiaries reported their shares of the income from said trust and the income from their accumulated shares as their own personal income and paid their income tax accordingly, but that on December 14, 1922, the plaintiffs were notified by the Commissioner of Internal Revenue that they should pay income tax for the years 1917 to 1921, inclusive, based on the shares of said beneficiaries and on the income for their accumulated shares until they reached the age of 21; that plaintiffs duly appealed from said order to the Committee of Appeals and Review, but by letter of March 22, 1924, plaintiffs were notified that said appeal was denied; that plaintiffs were thereupon compelled to pay the sum of four thousand seven hundred seven and 86/100 dollars ($4,707.86) as income tax of the trust for the years 1917 to 1921, inclusive, which sum was paid to the defendant herein on or about March 31, 1924, which tax was computed in accordance with said rule.

"Plaintiffs further allege that pursuant to said ruling they filed amended return for the calendar year 1923, reporting the shares of Katherine and Richard Ordway together with income on accumulations of Richard as income of the trust, and paid income tax thereon on September 15, 1924, and prior thereto in the amount of one thousand fifty-one and 87/100 dollars ($1,051.87).

"That in March, 1925, pursuant to decision of Scripps, Booth and Whitcomb, Trustees, 1 B. T. A. 491, plaintiffs made application for refund of said taxes for the years 1917 to 1921, inclusive, and for 1923, but said application was denied by letter of the Commissioner of Internal Revenue, dated September 30, 1925, on the ground that the Commissioner did not acquiesce in the decision of the Board of Tax Appeals.

"Wherefore, the plaintiffs demand judgment against the defendant for the sum of five thousand seven hundred fifty-nine and 73/100 dollars ($5,759.73), with interest at the rate of six per cent. (6%) per annum on four thousand seven hundred seven and 86/100 dollars ($4,707.86) from March 31, 1924, and on one thousand fifty-one and 87/100 dollars ($1,051.87) from September 15, 1924, together with their costs and disbursements herein."

The Commissioner determined that the part of the income which, under the terms of the trust, was to be expended or turned over to Katherine and to Richard or not, as the trustees determined, was taxable to the trust as an entity. Upon this theory, the tax was assessed and paid under protest. The pertinent portions of the statutes governing assessments for these several years involved are sections 2, 200 et seq., of the act of 1916 (39 Stat. 756, 777), sections 219, 400 et seq., of the act of 1918 (40 Stat. 1057, 1071, 1096), and section 219 of the act of 1921 (42 Stat. 227, 246 [Comp. St. §§ 6336b, 6336⅛ii]). In each of these acts, the intent is that annual income to a particular beneficiary from a trust estate shall be taxed to him as a separate unit of taxation where that income is "distributed" to him. "Distribution," as there used, does not necessarily mean passing into the uncontrolled possession and disposition of the beneficiary. It means separation and segregation from the trust estate so that it no longer forms any part or parcel thereof. The test set up by the statute is whether the income passes from the trust estate which produced it and ceases to be subject to the terms and control of *that trust.* If this trust instrument authorized such incomes to be so separated and segregated and they were so treated in fact, the Commissioner was in error and the trial court properly overruled the demurrer to this petition and entered judgment for the refund.

The instrument provides that each of the five children "shall be entitled to an equal proportion of the income of said trust fund." It then sets forth the method of annual distribution to them of this income. The broad intent is clearly that each child shall, each year, receive its one-fifth of the annual income. As to adults, the only limitation on

the distribution is that the trustees may choose "such times in the course of each year as shall be deemed by said trustees convenient and expedient"—in short, a discretion having in mind the conditions, each year, of the fund and its income. The circumstance that two of the children were minors made it necessary to provide for that situation in the annual distribution to each of them of his or her share. The creator of the trust deemed it unwise to pay such shares directly to them for their sole control. He recognized the wisdom of having the share going to each of them controlled by an adult who should make such expenditures therefrom as necessary for the "maintenance, education and support" of such minor and should invest any balance for the future benefit of such minor. He might have done this by requiring this annual share to be paid some designated guardian or trustee other than the individuals selected as trustees of the main fund. If he had provided that the annual share of Katherine should be paid over to A., who should make therefrom such expenditures as he deemed wise for her maintenance, education and support during minority and who should invest any balance for her benefit and allow such investment to accumulate until she was twenty-one and thereafter annually pay her the income from such accumulation and the principal when he thought advisable, there could be no question but that the trustees of the main fund were authorized to distribute, within the statutory meaning, such share belonging to Katherine. What legal difference can it make that the individuals who were to control and administer this separate property of Katherine happened to be the same persons who were trustees of the main fund? The legal effect is the same. Her share was just as effectually separated from the main trust and the fund which produced it. Equally, it is immaterial that the terms of the main trust and those of the management of her share were included within the same instrument.

The petition shows that this authorized distribution and treatment of the shares of these minors was executed with meticulous care. So authorized and so executed, the distribution was complete in the statutory sense.

The contention by plaintiff in error that the trust instrument contemplated a subsidiary trust in which the shares of Katherine and Richard should be held in common or community, is unfounded. The clearly expressed intent is that "each of my children shall be entitled to an equal proportion of the income of said trust fund" and there is no relation whatsoever between their shares after they are distributed by the trustees.

The judgment should be and is affirmed.